UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER M. OLEARY,

                Plaintiff,        Civil Action No. 14-10869
                                      Honorable Gerald E. Rosen
                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [21, 22]**

      Plaintiff Jennifer Oleary ("Oleary") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [21, 22], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Oleary is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [22] be GRANTED, Oleary's Motion for Summary Judgment [21] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.    REPORT**

      **A.    Procedural History**

      On April 11, 2011, Oleary filed an application for SSI, alleging a disability onset date of

September 15, 2002.[1] (Tr. 134-41). This application was denied initially on June 2, 2011. (Tr. 84-87). Oleary filed a timely request for an administrative hearing, which was held on April 26, 2012, before ALJ John Rabaut. (Tr. 29-67). Oleary, who was represented by non-attorney representative Dannelly Smith, testified at the hearing, as did vocational expert Harry Cynowa. (*Id.*). On May 24, 2012, the ALJ issued a written decision finding that Oleary is not disabled. (Tr. 17-24). On July 24, 2013, the Appeals Council denied review. (Tr. 3-7). Oleary timely filed for judicial review of the final decision on February 25, 2014. (Doc. #1).

**B. Background**

*1. Oleary's Disability Reports and Testimony*

At the time of the administrative hearing, Oleary was 29 years old. (Tr. 37). She graduated from high school but had no further education. (Tr. 37, 169-70). She had not worked since 2002, when she had been a daycare provider. (Tr. 36, 169). She lives in a house with her husband and two children. (Tr. 37, 187). According to Oleary, she has chronic migraines (which last for one or two hours at a time) and severe irritable bowel syndrome ("IBS"), which gives her constant diarrhea after she eats. (Tr. 38, 55, 169). She testified that she needs to use the bathroom six to eight times a day, for fifteen minutes at a time. (Tr. 38). According to Oleary, she has accidents "every day," because she cannot control her bowels. (Tr. 56, 188). She also suffers from depression and anxiety, with crying spells and difficulty sleeping. (Tr. 39).

Oleary indicated that approximately three days a week, she drives her children to school. (Tr. 39-40, 188). She is able to prepare simple meals, care for her own personal needs, do laundry, and attend her children's school and sporting events. (Tr. 40-42, 187-89, 191). She testified that physical activity exacerbates both her migraines and her IBS; however, she also

---

[1] At the administrative hearing, Oleary amended her alleged onset date to April 20, 2010, and withdrew a previously-filed application for Disability Insurance Benefits. (Tr. 32).

2

testified that she can lift up to 50 pounds. (Tr. 43, 47). She takes migraine medication (but claims it does not help), and she takes Xanax for anxiety. (Tr. 44-45). Her migraines make it difficult to concentrate enough to follow written instructions. (Tr. 192).[2]

### 2. *Medical Evidence*

In July 2009, Oleary underwent a gastric emptying study, which was normal (Tr. 295), and a CT of her abdomen and pelvis, which revealed no acute findings (Tr. 298). She also had a colonoscopy in July 2009, which was normal. (Tr. 296).

Oleary treated with Dr. Kaura, her primary care physician, between October 2009 and February 2012. (Tr. 222-23, 251-61, 313-22). During that period of time, Dr. Kaura noted that Oleary's abdominal examinations were normal, and she was in no acute distress. (Tr. 222, 251, 253-61, 314-22). Oleary also received treatment at Park Urgent Care between March 2010 and March 2012 – primarily for respiratory issues – and her providers there consistently found her abdomen non-tender. (Tr. 267-76, 334-41).

On February 12, 2010, Oleary presented to Oakwood Hospital and Medical Center, complaining of nausea and vomiting. (Tr. 402). On examination, the attending physician observed that she was in no acute distress, her abdomen was non-tender, she was oriented to three spheres, and her mood and affect were normal. (Tr. 402-03).

On April 22, 2010, Oleary again presented to Oakwood, complaining of abdominal pain with nausea and vomiting. (Tr. 384-400). An abdominal CT scan was performed, which was unremarkable. (Tr. 399). Two days later, on April 24, 2010, Oleary presented to Henry Ford Wyandotte Hospital, complaining of abdominal pain with nausea, vomiting, and diarrhea. (Tr. 283). On examination, her abdomen was mildly tender with no masses or distension. (Tr. 284).

---

[2] In a third-party function report, Oleary's husband, Justin, generally corroborated Oleary's statements. (Tr. 199-206).

The doctor also observed that although her affect was anxious and she was depressed and crying, she was oriented to three spheres and her speech, memory, insight, and concentration were intact. (*Id.*). The following day, Oleary returned to Henry Ford, complaining of worsening diarrhea and vomiting over the past two weeks, as well as a 20-pound weight loss over the previous two months. (Tr. 278). The examining physician noted that Oleary was in no distress, her abdomen was non-tender, and she had no focal neurological defects. (Tr. 279). While in the hospital, Oleary was also examined by Dr. Surjit Mahal, a psychiatrist, who observed that her speech, language, and communication skills were adequate, and she was not experiencing any hallucinations, delusions, or thought disorders. (Tr. 280). Dr. Mahal noted that Oleary's insight was "rather poor," and her judgment was marginal, but she was fully oriented and her memory and other cognitive functions were basically intact. (*Id.*). In Dr. Mahal's opinion, Oleary had the "classical picture of generalized anxiety disorder and panic disorder with mostly physical manifestations." (*Id.*).

Between May 2010 and March 2012, Oleary treated with Dr. Nancy Juopperi at the Michigan Neurology Center for her migraine headaches. (Tr. 235-47, 324-33). On May 5, 2010, Dr. Juopperi noted that Oleary's mental status, memory, and sensory examinations were intact; her attention and concentration were within normal limits; and her motor examination demonstrated no focal or lateralizing weakness. (Tr. 246-47). Dr. Juopperi ordered an MRI of Oleary's brain, which was normal. (Tr. 248). At subsequent appointments, Dr. Juopperi found that Oleary's neurological examinations were unchanged. (Tr. 235, 236, 238, 240, 242, 244, 324, 328, 330).

On August 10, 2010, Oleary attended a psychological consultative examination with Suzann Kenna, LLP, and Terrance Mills, Ph.D. (Tr. 224-27). She reported that her anxiety and

4

depression began in 2003, after the birth of her second child, but she had not received any mental health treatment or been hospitalized for mental illness. (Tr. 224). The examiners noted that Oleary was nicely dressed and groomed; her eye contact was good; her speech was logical and organized; she denied hallucinations, delusions, persecutions, and obsessions; and she was oriented to three spheres. (Tr. 225). She could repeat seven digits forward and three backward, recall three of three objects after three minutes, and name two Presidents and her date of birth. (Tr. 226). Oleary was diagnosed with major depressive disorder (moderate) and generalized anxiety disorder. (*Id.*).

That same day, Oleary attended a physical consultative examination with Dr. Leonidas Rojas. (Tr. 228-33). Dr. Rojas noted that Oleary was in no visible distress, was well-oriented, her abdomen was non-tender, and her lumbosacral spine was non-tender and unrestricted. (Tr. 228-29). Dr. Rojas concluded that, "From the internist perspective, it is thought that her ability to perform work-related activities is not greatly impaired." (Tr. 229).

On June 28, 2011, Oleary underwent a psychosocial assessment at Team Mental Health Services. (Tr. 354-59). The examiner concluded that while Oleary's insight and judgment were limited, her affect and mood were appropriate, she was of average intelligence, she was oriented to three spheres and coherent, and there was no sign of abnormal behavior or suicidal ideation. (*Id.*). On June 30, 2011, Dr. Chan, a psychiatrist, examined Oleary, noting that she was oriented to four spheres, with good eye contact, normal speech, logical thought process, and average intelligence. (Tr. 343-44). When Oleary returned on August 2, 2011, Dr. Chan made the same findings. (Tr. 363).

    3.    *Vocational Expert's Testimony*

Harry Cynowa testified as an independent vocational expert ("VE") at the administrative

hearing. (Tr. 56-65). The VE characterized Oleary's past relevant work as a retail sales attendant and child care monitor as ranging from unskilled to semi-skilled in nature and performed at the light or medium exertional level. (Tr. 58). Then, the ALJ asked the VE to imagine a claimant of Oleary's age, education, and work experience, who could perform light work, with the following additional limitations: no climbing ladders, ropes, or scaffolds; limited to simple, routine, and repetitive tasks; limited to work performed in an environment free of fast-paced production requirements, involving only simple work-related decisions, and with few, if any workplace changes; and only occasional interaction with the public. (Tr. 61). The VE testified that the hypothetical individual would not be capable of performing Oleary's past relevant work. (Tr. 61). However, the VE testified that the hypothetical individual would be capable of working in the jobs of hand packager (2,500 jobs in southeastern Michigan), small products assembler (2,500 jobs), and visual inspector (1,000 jobs). (*Id.*).

### C. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    **D.**    **The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Oleary is not disabled under the Act.  At Step One, the ALJ found that Oleary has not engaged in substantial gainful activity since March 23, 2011, the application date.  (Tr. 19).  At Step Two, the ALJ found that Oleary has the severe impairments of migraines, IBS, generalized anxiety disorder, and depressive disorder.  (*Id.*).  At Step Three, the ALJ found that Oleary's impairments do not meet or medically equal a listed impairment.  (Tr. 19-20).

The ALJ then assessed Oleary's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations:  no climbing ladders, ropes, or scaffolds; limited to simple, routine, and repetitive tasks; limited to work performed in an environment free of fast-paced production requirements, involving only simple work-related decisions, and with few, if any workplace changes; and only occasional interaction

with the public. (Tr. 20-23).

At Step Four, the ALJ determined that Oleary is not capable of performing her past relevant work. (Tr. 23). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Oleary is capable of performing a significant number of jobs that exist in the national economy. (Tr. 23-24). As a result, the ALJ concluded that Oleary is not disabled under the Act. (Tr. 24).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility

of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2011); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 -F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.  Analysis**

In her motion for summary judgment, Oleary argues that the ALJ erred in failing to adequately assess the credibility of her subjective complaints and in determining her RFC. (Doc. #21). Each of these arguments will be addressed in turn.

*1.  The ALJ's Credibility Determination is Supported by Substantial Evidence*

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. &*

*Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible.  *Soc. Sec. Rul.* 96-7, 1996 WL 374186, *1 (July 2, 1996); *see also* 20 C.F.R. §416.929.

In this case, after finding at Step Two that Oleary suffers from the severe impairments of migraines, IBS, anxiety, and depression (Tr. 19), the ALJ concluded that she nevertheless retains the residual functional capacity to perform a reduced range of light work.  (Tr. 20-23).  In reaching this conclusion, the ALJ specifically referenced Oleary's testimony that she suffers from migraines and chronic diarrhea (which makes it difficult for her to leave the house), tries to avoid heavy lifting, and "cries and gets depressed."  (Tr. 21).  However, the ALJ found that while Oleary's conditions could reasonably be expected to produce the alleged symptoms, her statements about the intensity, persistence and limiting effects of those symptoms were not entirely credible to the extent they conflicted with the RFC assessment.  (Tr. 22).  In reaching this conclusion, the ALJ specifically considered Oleary's work history, activities of daily living, and the objective medical evidence, and he gave good reasons for discrediting Oleary's allegations of work-preclusive limitations.  (Tr. 20-23).

10

As an initial matter, the ALJ properly considered the objective medical evidence when evaluating Oleary's credibility. Specifically, the ALJ noted that Oleary's treating gastroenterologist consistently found that her test results were negative. (Tr. 22 (citing Tr. 309-12)). For example, a July 2009 gastric emptying study and abdominal CT scan were normal, as were a July 2009 colonoscopy and an April 2010 abdominal CT. (Tr. 295-96, 298, 399). The ALJ also noted that Oleary's treating neurologist, Dr. Juopperi, ordered a brain MRI in May 2010, which was negative. (Tr. 21 (citing Tr. 248)). Objective evidence – such as the test results discussed above – is a "useful indicator" for an ALJ to use when evaluating the credibility of a claimant's symptoms. *See* 20 C.F.R. §416.929(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

In addition, in assessing the credibility of Oleary's allegations, the ALJ noted that several physicians, including Dr. Mahal (a psychiatrist), concluded that her physical problems were not severe enough to prevent her from performing work, as her main impairment was psychological. (Tr. 22). Oleary challenges this conclusion, asserting that her medical records "document her on-going, struggle with the symptoms of her physical impairments," and that "[w]hether caused by psychological factors of [sic] physical impairments, [her] debilitating symptoms are presented and still cause severe limitations." (Doc. #21 at 10). Oleary's argument misconstrues the ALJ's decision, however. The ALJ did not merely reject Oleary's allegations of disabling physical limitations; rather, he considered the impact of her physical impairments in formulating her RFC. For example, the ALJ found that Oleary's migraines and IBS are severe impairments. (Tr. 19). In addition to the objective medical evidence discussed above, he considered her treatment with

Dr. Kaura and Dr. Juopperi for migraines, her treatment with Dr. Kaura for gastrointestinal problems, her admission to Henry Ford Wyandotte for diarrhea and weight loss, and her fifteen-pound weight gain between May 2010 and February 2011.[3] (Tr. 21-22). After considering all of this evidence, the ALJ included physical restrictions when formulating Oleary's RFC, limiting her to light work that does not require climbing ladders, ropes, or scaffolds. (Tr. 20). Thus, contrary to Oleary's assertion, the ALJ did not simply dismiss her allegations of physical limitations; he simply concluded that the evidence did not square with her allegations of physical disability – a conclusion that is well-supported by the record.

Moreover, in evaluating Oleary's credibility, the ALJ noted that despite her allegations of disabling pain, she engages in extensive daily activities. Specifically, the ALJ noted that Oleary drives her children to school, prepares simple meals, cares for her own personal needs, does some household chores, and attends her children's school and sporting events. (Tr. 21). It was appropriate for the ALJ to consider the fact that Oleary's daily activities are less limited than one would expect, given her allegations of disabling pain. *See Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the credibility of the claimant's assertion of pain).

Finally, the ALJ also noted in evaluating Oleary's credibility that her work history reflected a "minimal attachment to the work force," as she worked only briefly before starting her family. (Tr. 23). This was an appropriate consideration. 20 C.F.R. §416.929(a), (c)(3); *Soc. Sec. Rul.* 96-7p, 1996 WL 374186, at *5-6 (July 2, 1996); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (appropriate for ALJ to consider poor work history when evaluating credibility).

---

[3] Specifically, the ALJ noted that Oleary's testimony that she experienced severe episodes of vomiting and diarrhea, multiple times a day, was belied by the fact that "she gained fifteen pounds in a nine-month period rather than losing weight because of a lack of food intake and retention." (Tr. 23 (citing Tr. 235-47)).

In sum, the ALJ recognized the duty imposed upon him by the regulations and, contrary to Oleary's assertions, he provided "specific reasons for [his] finding on credibility." (Doc. #21 at 12). Indeed, in assessing Oleary's credibility, the ALJ properly considered her work history, daily activities, and the objective medical evidence. Thus, the ALJ's credibility determination is supported by substantial evidence and should not be disturbed.

### 2. *The ALJ's RFC Determination is Supported by Substantial Evidence*

Oleary also challenges the ALJ's conclusion that she retains the RFC to perform a reduced range of light work.[4] (Doc. 21 at 12-16). As set forth above, the ALJ found that Oleary is capable of performing light work, with the following additional limitations: no climbing ladders, ropes, or scaffolds; limited to simple, routine, and repetitive tasks; limited to work performed in an environment free of fast-paced production requirements, involving only simple work-related decisions, and with few, if any workplace changes; and only occasional interaction with the public. (Tr. 20-23). The ALJ's physical RFC finding is supported by the various pieces of medical evidence discussed above, including: (1) the July 2009 gastric emptying study and abdominal CT scan, which were normal (Tr. 295, 298); (2) the July 2009 colonoscopy, which revealed a normal colon (Tr. 296); (3) the April 2010 abdominal CT scan, which was normal (Tr. 399); (4) the fact that, on examination, Oleary's abdomen was generally non-tender or normal

---

[4] Actually, Oleary challenges the ALJ's finding that she "retained the ability to perform 'light work' with the ability to [sic]: frequently climb ramps and stairs, balance, stoop and crouch; occasionally climb ladders, ropes and scaffolds; crawl and kneel; limited to no concentrated exposure to temperature extremes, humidity, fumes and odors, dusts, gases or areas of poor ventilation and no exposure to hazards; no over-shoulder reaching with the right upper extremity; limited to doing only simple, routine, repetitive tasks performed in low-stress work environments with no fast-paced or production-rate quotas; claimant requires the option to alternative sitting and standing as needed in the performance of job duties; limited to no contact with the general public and no more than occasional contact with co-workers and supervisors." (Doc. #21 at 13). As this clearly is not Oleary's RFC, as determined by the ALJ, it is apparent that much of Oleary's argument in this respect is merely cut and pasted from a brief her counsel filed on behalf of another client.

13

(Tr. 222, 228-29, 251, 253-61, 267-76, 314-22, 334-41, 402-03); and (5) the fact that, with respect to Oleary's headaches, her medication was generally effective (Tr. 235, 238, 242, 244, 328, 332), and her neurological and motor findings were essentially normal (Tr. 229, 235-36, 238, 240, 242, 244, 252, 279, 284, 324, 327-28, 330). Oleary does not point to any specific medical evidence in challenging the ALJ's physical RFC finding, nor does she explain what additional physical limitations should have been imposed. For all of these reasons, the ALJ's physical RFC finding is supported by substantial evidence.

Oleary also argues that the ALJ "failed to properly consider [her] mental health impairments when determining her ability to perform full-time work." (Doc. #21 at 14). However, the ALJ's mental RFC finding is supported by the evidence discussed above, including (1) the consistent findings of Oleary's treating neurologist, Dr. Juopperi, that her mental status, memory, and sensory examinations were intact, her attention and concentration were within normal limits, and her motor examination demonstrated no focal or lateralizing weakness (Tr. 235-44, 324-30); (2) Dr. Chan's observations in June and August 2011 that she was oriented to four spheres, with good eye contact, normal speech, logical thought process, and average intelligence (Tr. 343-44, 363); (3) Dr. Mahal's observations in April 2010 that Oleary's speech, language, and communication skills were adequate, and she was not experiencing any hallucinations, delusions, or thought disorders (Tr. 280); (4) Dr. Mills' and Ms. Kenna's observations at Oleary's consultative examination that she was nicely dressed and groomed, her eye contact was good, her speech was logical and organized, and she was oriented to three spheres (Tr. 225); (5) Dr. Rojas' observation at Oleary's consultative physical examination that her thought content and association were grossly normal (Tr. 229); and (6) the May 2010 brain MRI, which was normal (Tr. 248). Moreover, the ALJ's conclusion that Oleary can perform

simple, routine, and repetitive tasks (in an environment free of fast-paced production requirements, involving only simple work-related decisions, and with few, if any, workplace changes) is consistent with – and, in fact, more restrictive than – the state agency examiner's conclusion that she can perform "simple/routine tasks on a sustained basis." (Tr. 20, 82). In summary, the ALJ's mental RFC finding is consistent with the medical and other evidence in the record.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [22] be GRANTED, Oleary's Motion for Summary Judgment [21] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: December 15, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991);

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 15, 2014.

                s/Eddrey O. Butts
                EDDREY O. BUTTS
                Case Manager